**IN THE UNITED STATES DISTRICT COURT OF MARYLAND**
**GREENBELT DIVISION**

STERLING LINDSAY
RACHEL LINDSAY

    *Plaintiffs,*

       v.                         Civil No. 8:15-cv-1031-PWG

RUSHMORE LOAN MANAGEMENT SERVICES, LLC

    *Defendants.*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW, Plaintiffs, STERLING LINDSAY and RACHEL LINDSAY, (hereinafter, "Plaintiffs"), by and through counsel, Shikha Parikh, and Paradigm Law, P.L.C., and for their Complaint state as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs institute this action for actual damages, statutory damages, attorney fees, and the costs of this action against Defendants for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. and its implementing regulation, Regulation X, at 12 C.F.R. § 1024.41(b)(2) (sometimes thereinafter referred to as "Regulation X"), for breach of fiduciary duty, violations of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 –1692p, and violations of the Maryland Consumer Debt Collection Act, Md. Code, Comm. Law §14-201 *et seq.*

## **PARTIES**

2.      Plaintiffs incorporates all other paragraphs in this Complaint by reference as though fully written there.

3.      Plaintiff, Sterling Lindsay, is a resident of Maryland and is the lawful titleholder of 2507 Monroe Court, Waldorf, Maryland 20603 (hereinafter, "Property").

4.      Plaintiff Sterling Lindsay was and is a person within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to this allegations therein.

5.      Plaintiff, Rachel Lindsay, is a resident of Maryland and is the lawful titleholder of 2507 Monroe Court, Waldorf, Maryland 20603.

6.      Plaintiff Rachel Lindsay was and is a person within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to this allegations therein.

7.      Defendant, Rushmore Loan Management Services, LLC (hereinafter, "Rushmore"), is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Wilmington, Delaware. Rushmore regularly transacts business in the State of Maryland.

8.      Defendant Rushmore was and is a person within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to the allegations therein.

9.      Defendant Rushmore was and is a loan servicer of the Plaintiffs' mortgage loan within the meaning of RESPA at 12 U.S.C. §§ 2605(i)(2) and 2602(1), at all times relevant to the allegations therein.

10.     Defendant Rushmore is a "debt collector" " within the meaning of the Fair Debt Collection Practice Act (hereinafter, "FDCPA"), as defined at 15 U.S.C. §1692a(6), a "collector" as defined by the Maryland Consumer Debt Collection Act (hereinafter, "MCDCA"), Md. Code

§14-201(b), and a "person" as defined by MCDCA, Md. Code. §14-201(d).  Rushmore also

engages in "communication" as defined at 15 U.S.C. §1692a(2) by using one or more

instrumentalities of interstate commerce or the mails in a business, the principal purpose of

which is the enforcement of security interests.

## JURISDICTION AND VENUE

11.     The Court has the authority to exercise personal jurisdiction over Defendants in

the action because they transacted business, including the transactions at issue in the present

matter, within the state of Maryland.

12.     Jurisdiction is vested and proper in this Court, pursuant to 28 U.S.C. §1331.

13.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b)(2), as the events or

omissions took place in Charles County, Maryland, and the property which is the subject of this

action is located in Charles County, Maryland.

## FACTS

14.     On or about January 17, 2007, Plaintiffs entered into a financial transaction to

refinance their Property's mortgage, and executed a Deed of Trust as security against the

Property.  **Exhibit A.**

15.     On the same date, Plaintiffs also executed an Interest-Only Period Fixed Rate

Note (hereinafter, "Note"), in the amount of $412,800.00. **Exhibit B.**

16.     The present loan servicer for the subject mortgage is Rushmore.

17.     On or about October 1, 2014, James E. Clarke, Patrick Decker, Renee Dyson,

attorneys of Atlantic Law Group (hereinafter, "ALG"), were appointed as the substituted trustees

under the Deed of Trust.

18.     An action to foreclose was filed on October 7, 2014, Case No. C-14-002602, Circuit Court for Charles County.  Plaintiffs were was served with the Order to Docket Foreclosure on or about October 15, 2014.

19.     In October 2014, Plaintiffs submitted a facially complete loan modification application package to Rushmore. Defendants did not hear anything in response.

20.     During foreclosure mediation on December 10, Plaintiffs were advised that Rushmore needed more documents from Plaintiffs to complete the modification review. These documents were not requested prior to mediation.

21.     During and after the foreclosure mediation, ALG acted as agent for Rushmore, accepting and requesting documents for the loan modification review, and communicating regarding loss mitigation.

22.     The following documents were requested at mediation, and were later confirmed by Erin Cohen, an attorney for ALG:

  A.  Most recent signed & dated tax return for 2013

  B.  Most recent paystubs

  C.  Most recent signed & dated hardship letter

  D.  Proof of down payment – letter of explanation

  E.  6 Mo. P&L Statement and 6 Mo. Business Bank Statements for Basketball
    Coaching

23.     As to Request "E," Mr. Lindsay coaches basketball for local youth, which Rushmore deemed a "business."  The income generated from this activity comprises of approximately 6% of his total yearly income, the remainder of which is earned through W-2 income at full-time employment.

24.     As to Request "E," Mr. Lindsay had advised Rushmore and its counsel that, due to the nature of his "business," he did not have separate business bank statements, as he primarily engaged in the activity due to its community contribution, not for the compensation he received.

25.     On December 17, 2014, Mr. Lindsay provided the documents to Erin Cohen via email, and advised her that business bank statements did not exist for his basketball coaching "business," as that income went directly into his personal bank account.

26.     The documents were sent to counsel for ALG, Erin Cohen, on or about December 17, 2014, via email.

27.     On December 29, 2014, ALG, on behalf of Rushmore, requested that Mr. Lindsay provide yet another P&L, and business bank statements.  ALG also requested "Schedule C" of Mr. Lindsay's tax returns, which would also reflect the "business" income.  Mr. Lindsay provided the documents on December 30, 2014.

28.     On or about January 15, 2015, Rushmore sent Defendants a letter stating they were declined a loan modification because their loss mitigation application was not sent prior to 37 days of the foreclosure sale date. **Exhibit C.**

29.     Despite having a complete loss mitigation application, Defendant Rushmore instructed ALG to schedule a foreclosure sale, which was set for February 5, 2015.

30.     **As of December 17, 2014, Rushmore had a substantially complete loss mitigation application in its possession.**  The documents submitted to counsel for ALG were submitted more than 37 days before the scheduled foreclosure sale.

31.     The documents requested on December 29, 2014, were simply to verify information already in the possession of Rushmore.  Rushmore was already aware that business bank statements did not exist, and Rushmore was already in possession of Mr. Lindsay's filed

2013 tax returns, which contained the exact same information as the information that is presented on Schedule C.

32.     On February 2, 2015, ALG's counsel, Rita Ting-Hopper, was advised that a substantially complete application had been submitted on December 17, 2014.

33.     ALG was also advised that it was conducting a foreclosure illegally, as it had been scheduled in violation of the dual-tracking prohibitions provided in Regulation X.

34.     ALG, acting on behalf of Rushmore, refused to cancel the foreclosure sale, despite being made aware that the foreclosure was illegally scheduled and in violation of Regulation X.

35.     On February 3, 2015, the undersigned requested an emergency stay of the foreclosure, due to Rushmore's illegal dual-tracking.

36.     The Circuit Court for Charles County ordered that the foreclosure sale be stayed, and it was subsequently cancelled by ALG.

37.     If the matter had not been taken before the Circuit Court, the foreclosure sale would not have been cancelled voluntarily by ALG and/or Rushmore.

38.     On February 19, 2015, Mr. Lindsay submitted a short sale package, which contained an offer from the SUN Initiative.[1]  This package was submitted through ALG's office and was also faxed directly to Rushmore.

---

[1] The SUN Initiative is a project initiated by Boston Community Capital, a nonprofit organization committed to community and economic development.  The SUN Initiative is used in four states across this country.  Maryland is the second state to partner with the SUN Initiative after the program was launched in Massachusetts more than four years ago. SUN is an abbreviation for Stabilizing Urban Neighborhoods.  Under this program, homes in foreclosure are purchased at fair market prices and then sold back to the homeowners who receive a reduced, more affordable 30-year fixed rate mortgage.  In 2013, the Maryland Department of Housing and Community Development established the Foreclosure Relief Repurchasing Program, to be supported through the Maryland Housing Counseling Fund, pursuant to Md. Code, Real. Prop. §7-105.1 and Md.

39.     On March 23, 2015, the undersigned inquired with ALG as to the status of the short sale review.

40.     On March 26, 2015, ALG provided a computer generated letter declining Plaintiffs a loan modification. **Exhibit D.**   This letter was issued 35 days after the short sale application submission.

41.     Upon information and belief, ALG instructed Rushmore to generate the decline letter, rather than Rushmore generating the decline letter of its own accord.

42.     On the same day, the undersigned clarified that a status on the short sale package was being requested.

43.     On April 1, 2015, ALG provided another computer generated letter declining Plaintiffs the short sale.  This letter was issued 40 days after the short sale application submission.

44.     Neither of these letters were sent to Plaintiffs, and were sent only to the undersigned after inquiry.

45.     On or about January 13, 2009, Mr. Lindsay filed for Chapter 13 Bankruptcy, Case No. 09-10551.

46.     At the time the bankruptcy was filed, approximately $36,000 was owed to the purported loan servicer at the time, Acqura Loan Services.

---

Code, Hous. & Comm. §4-507. In late 2013, the SUN Initiative was selected to partner with Maryland's Foreclosure Relief Repurchasing Program.    To facilitate the SUN Initiative, the Maryland legislature created an exception to the Protecting Homeowners in Foreclosure Act and the Code governing residential property foreclosure procedure, enacting Emergency House Bill 595, later codified as MD. Code, Real. Prop. §7-105.1(n-1).

47.    On or about June 4, 2009, a Chapter 13 payment plan was confirmed by the bankruptcy court.  This plan contemplated the payment of the pre-petition arrearage over the course of thirty-four (34) months, which would result in a completion date of April 2012.

48.    On or about May 6, 2010, the automatic stay was modified and Mr. Lindsay was ordered to catch up on post-petition arrearages, and also make regular monthly payments of $3,012.78 beginning June 1, 2010. **Exhibit E.**

49.    The May 6, 2010 Order specifically stated that, if Mr. Lindsay defaulted, the mortgageholder's attorney was to "file a notice with this Court stating the amount due under this Order ... any cure of the Notice of Default must include all amounts set forth therein, as well as any payments which have subsequently become due under the terms of the Consent Order Modifying Automatic Stay and that are due at the time Debtor tenders funds to cure the default." **Exhibit E.**

50.    Mr. Lindsay complied with the May 6, 2010 order.

51.    Mr. Lindsay made all of his Chapter 13 plan payments, and paid off his pre-petition arrearages by April 2012.

52.    On or about August 1, 2012, a Declaration of Default was filed on behalf of Acqura Loan Services, stating that payments were due for June 1, 2012, July 1, 2012, and August 1, 2012. **Exhibit F.**   At this time, it appears the amount due was equivalent to three mortgage payments of $3,012.78.

53.    As such, the earliest date that Mr. Lindsay could be delinquent is as of June 2012.

54.    In August 2012, the same time Mr. Lindsay was declared in default, the servicing of the loan was transferred to Defendant Rushmore.  As such, the mortgage was declared to be in default when Rushmore acquired the loan servicing.

8

55.     On or about December 11, 2013 a notice of intent to foreclose was sent to Plaintiffs by Defendant Rushmore.  **Exhibit G.**  In this correspondence, Rushmore identifies itself as a "debt collector as defined in the federal Fair Debt Collection Practices Act."

56.     This notice of intent to foreclose stated that the "date of default" was May 2, 2011.  The notice stated amount due to cure the default was $100,656.57. **Exhibit G.**

57.     On or about December 11, 2013, Rushmore sent Plaintiffs a notice that the total amount due was $102,807.36. **Exhibit H.**  In this letter, Rushmore also identifies it "debt collector as defined in the federal Fair Debt Collection Practices Act."

58.     Mr. Lindsay should have been current on his mortgage as of May 1, 2012. Therefore, the maximum amount due in mortgage payments, as of December 2013, could be no more than **$57,242.82.**

59.     On several phone conversations with the prior loan servicer and Rushmore, the present loan servicer, Mr. Lindsay repeatedly tried to explain that the amount due was incorrect.

60.     At the time the foreclosure action was filed, the amount due claimed, in interest and escrow advances, was $115,081.68.

61.     At this time, the maximum amount due would be no more than $87,370.62.

62.     During the time between December 2013 until the present, Rushmore continued to incorrectly represent the amount due through correspondence or court filings.

63.     As such, Rushmore improperly applied Plaintiffs' payments and intentionally provided Plaintiffs with incorrect information regarding the default amount.

64.     Mr. Lindsay repeatedly sought to correct this error with Rushmore.

65.     As a result of Rushmore's refusal to correct the amount owed or work with Mr.

Lindsay otherwise, Plaintiffs suffered stress, fear of losing their home, out-of-pocket expenses,

embarrassment, frustration, upset, anger, humiliation and severe emotional and mental distress.

66.     Another error represented by Rushmore was that, in the notice of intent to

foreclose the secured party was identified as RBS Financial Products, Inc..  Upon information

and belief, this was an incorrect identification.

67.     As early as May 2010, Random Properties Acquisition Corp III was represented

as the "owner" of the debt.  See **Exhibit E.**

68.     Further, in the subsequently filed foreclosure action in October 2014, Random

Properties Acquisition Corp. III was listed as the secured party.

69.     As a result of Rushmore's represented inaccuracies, Plaintiffs could not work out

the errors on their mortgage and were forced to live in fear of losing their home, out-of-pocket

expenses, embarrassment, frustration, upset, anger, humiliation and severe emotional and mental

distress.

70.     On April 8, 2015, Plaintiffs, through undersigned counsel, submitted a Qualified

Written Request ("QWR") to Rushmore, pursuant to the Dodd-Frank Wall Street Reform and

Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) and the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C.§ 2605(e).  See **Exhibit I.**

71.     On May 21, 2015, Rushmore acknowledged receipt of the aforementioned QWR.

See **Exhibit J.**

72.     On June 12, 2015, Rushmore provided its response to the QWR.  See **Exhibit K.**

73.     70.     Rushmore did not provide responses to the following items requested in

the QWR,

74.      Certified-true copy of the original promissory note (Compare **Exhibit I** at number 1, with **Exhibit K**).

75.      Copy of the account and general ledger statement showing all activity on the account for the life of the loan (Compare **Exhibit I** at number 4, with **Exhibit K**) ,

76.      A written explanation regarding the amount of debt owed and to whom said debt is owed, including a statement of the reasons for which Rushmore believes the account of the borrower to be correct, and if applicable, why this information may be unavailable or cannot be obtained (Compare **Exhibit I** at number 6, with **Exhibit K**) ,

77.      All notes related to the application and processing of a loan modification up to and including the date of the QWR.  If such records do not exist, a statement should be provided to that effect along with Rushmore's reason for concluding that no such application was made. (Compare **Exhibit I** at number 7, with **Exhibit K**),

78.      Whether Mr. and Ms. Lindsay were reviewed for all available loss mitigation options, along with supporting documentation proving same (Compare **Exhibit I** at number 8, with **Exhibit K**); and,

79.      Mortgage statements for the previous 12 months. Compare Exhibit I at number 9, with **Exhibit K.**

80.      In response to the aforementioned items, Rushmore stated that the requested information, "…does not relate to the servicing of the loan or identify any specific servicing errors, is considered proprietary or confidential, is not in [Rushmore's] possession, and/or is not required to be provided."   See **Exhibit K.**

## COUNT I
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)
12 U.S.C. § 2601 *et seq*. and 12 C.F.R. § 1024.41

81.     Plaintiff incorporates the above paragraphs by reference as though fully set forth herein.

82.     Pursuant to Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. and its implementing regulation, Regulation X, at 12 C.F.R. § 1024.41(b)(2), Rushmore had to follow certain guidelines during the pendency of Defendant's loss mitigation review.

83.     Rushmore received a facially complete loan modification application package from Plaintiffs on December 17, 2014.  As of December 17, 2014, Rushmore had all of the information it needed to appropriately review Plaintiff's eligibility.

84.     The package was facially complete per 12 C.F.R. § 1024.41(c)(2)(iv).

85.     Further, when Plaintiffs sent more documents on December 31, 2014, the package was still facially complete.

86.     Despite these circumstances, Rushmore instructed the foreclosure sale on February 5, 2015, in violation of the dual-tracking provisions in RESPA.

87.     Pursuant to 12 C.F.R. § 1024.41(g), loan servicers are prohibited from conducting a foreclosure sale if a complete loss mitigation package is sent to the loan servicer more than 37 days before the foreclosure sale date.

88.     Specifically, § 1024.41(g) states that

If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or nonjudicial foreclosure process but more than 37 days before a foreclosure sale, a servicer **shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale** (emphasis added).

89.     As of 2014, Rushmore had all of the information it needed to appropriately review Plaintiff's eligibility.

90.     As a result of Rushmore's own typical delays, additional documentation was requested on December 29, 2014.

91.     By referring Plaintiff's loan to foreclosure after a timely loss mitigation review had begun and the modification review was in process, Rushmore unlawfully engaged in dual tracking in violation of 12 C.F.R. § 1024.41(g).

92.     Therefore, Rushmore illegally proceeded with foreclosure when it should have been reviewing Plaintiffs for a modification.

93.     Further, Rushmore failed to send the notice of incomplete application within five (5) days of receipt of Plaintiffs' application, as required by 12 C.F.R. § 1024.41 (b)(2)(i)(B).

94.     As a result of Rushmore's RESPA violations, the Plaintiff has incurred damages in the form of emotional distress, fear of loss of their home, and other damages, including damage to their credit, attorney's fees, and the fear of eviction.

95.     As a result of Rushmore's failure to comply with RESPA, the Plaintiff has suffered emotional distress in the form of anxiety and distress, including fears that Rushmore was not considering her for loss mitigation options as she had been led to believe, fear of losing their home, and that the prolonged consideration for loss mitigation was resulting in additional fees, charges, and interest being added to their account.

96.     Defendant Rushmore further violated RESPA Regulation X by referring Plaintiff's loan to foreclosure after loss mitigation had begun and the modification review was in process.

97.     After the foreclosure sale was postponed due to the Circuit Court's order, Plaintiffs submitted a package for short sale review on February 19, 2015.

98.     Rushmore was required to render a decision on the short sale application within thirty (30) days. 12 C.F.R. § 1024.41(c).  Rushmore did not render a decision within thirty days, in violation of the regulation.

99.     Defendant Rushmore is in clear violation of RESPA Regulation X and 12 USC 2605(k), and Plaintiffs are entitled to damages.

100.     Rushmore has engaged in a pattern or practice of noncompliance with RESPA by, at least:

> a.  Failing to appropriately review the Plaintiff's loss mitigation application to determine if it was complete in a timely fashion;
>
> b.  Failing to timely notify the Plaintiff in writing acknowledging receipt of their loss mitigation application;
>
> c.  Failing to notify the Plaintiff in writing that it has determined that the loss mitigation application is either complete or incomplete within the statutory timeframe;
>
> d.  Knowingly scheduling a foreclosure sale for February 5, 2015, when it had a facially complete loss mitigation package prior to 37 days before the foreclosure sale;
>
> e.  Failing to voluntarily postpone the foreclosure sale while reviewing the Plaintiff for loss mitigation options; and
>
> f.  Failing to render a decision on a loss mitigation application within the thirty (30) day requirements.

101.    Despite being informed through its agent, ALG, that Rushmore was in violation of the dual-tracking provisions in RESPA, ALG refused to cancel the foreclosure sale, and caused Plaintiffs to hire counsel to request an emergency stay with the Circuit Court.

102.    Rushmore intentionally proceeded with foreclosure despite being informed of its violation of RESPA.

103.    Upon information and belief, Rushmore engages in a pattern or practice of noncompliance with RESPA by failing to properly handle loss mitigation applications it receives from other borrowers.

WHEREFORE, Rushmore is liable to the Plaintiffs in the amount of actual damages amounting to $100,000, the maximum statutory damages available in the amount of at least $2,000 for each failure to comply with RESPA, attorney fees, and the costs of this action, pursuant to 12 C.F.R. § 1024.41(a) and 12 U.S.C. § 2605(f).

## COUNT II
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
15 U.S.C. §1692 *et seq.*

104.    Plaintiffs re-allege and incorporate the above paragraphs as if fully set forth therein.

105.    Defendant Rushmore violated 15 U.S.C. §1692 in one or more of the following ways, without limitation by:

a.      Falsely representing the amount of the debt to be $102,807.36 in the December 11, 2013 correspondence, in violation of 15 U.S.C. §1692e(2)(A);

b.      Misleading the Plaintiff to believe that the amount he paid to Rushmore and the previous loan servicer was incorrect, in violation of 15 U.S.C. §1692e(A) and §1692e(10)

15

c.      Falsely representing the creditor in the Notice of Intent to Foreclose,  in violation of 15 U.S.C. §1692e(A), §1692e(10), and/or §1692e(14)

d.      Failing to appropriately identify the name of the creditor to whom the debt is owed, in violation of 15 U.S.C. §1692g(a)(2).

e.      Falsely representing the amount of the debt to be $115,081.68 in the order to docket filings, in violation of 15 U.S.C. §1692e(2)(A).

16.      As a result of the conduct, actions and inactions of Defendant, Plaintiffs feared loss of their home to a foreclosure sale and expended money consulting with legal professionals about stopping the sale. Plaintiffs suffered actual damages including without limitation, by example only and as described herein by Plaintiffs: out-of-pocket expenses, embarrassment, frustration, upset, anger, humiliation and severe emotional and mental distress.

17.      Defendant Rushmore's conduct was the proximate cause of Plaintiffs' injuries, rendering Defendant liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

WHEREFORE, Rushmore is liable to the Plaintiffs in the amount of actual damages amounting to $25,000, the maximum statutory damages available in the amount of at least $1,000 for each failure to comply with the FDCPA, attorney fees, and the costs of this action, pursuant to 12 C.F.R. § 1024.41(a) and 12 U.S.C. § 2605(f).

**COUNT III**
**VIOLATIONS OF THE MCDCA**
Md. Code, Comm. Law, §14-201 *et seq.*

106.      Plaintiffs re-allege and incorporates the above paragraphs as if fully set forth therein.

107.    Plaintiffs received a mortgage loan, which is "consumer transaction" within the meaning of the MCDCA, §14-201(c). Defendant Rushmore attempted to the collect on the debt arising out of that loan and is a "collector" within the meaning of MCDCA, §14-201(b).

108.    Defendant Rushmore violated the MCDCA, §14-202(8) by claiming a grossly inaccurate amount due and identifying that it was collecting a debt on behalf of a party that had no legal right to the debt in its Notice of Intent to Foreclose.

109.    As a result of the conduct, actions and inactions of Defendant, Plaintiffs feared loss of their home to a foreclosure sale and expended money consulting with legal professionals about stopping the sale. Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: stress, out-of-pocket expenses, embarrassment, frustration, upset, anger, humiliation and severe emotional and mental distress.

110.    Defendant Rushmore's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant Rushmore liable for actual damages in an amount to be determined by the jury pursuant to MCDCA, §14-203.

WHEREFORE, Rushmore is liable to the Plaintiffs in the amount of actual damages amounting to $25,000, attorney fees, and the costs of this action, pursuant to MCDCA, §14-203.

### COUNT IV
### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)
12 USC §2605(e) *et seq.*

111.    Plaintiffs re-allege and incorporate the above paragraphs as if fully set forth therein.

112.    Under 12 USC §2605(e)(1)(A), within five days of receiving our QWR, Rushmore was required to provide a written response acknowledging receipt of the correspondence.

113.     Under 12 USC §2605(e)(2)(C), within 30 days of receiving the QWR, Rushmore was obligated to conduct an investigation, and then provide Plaintiffs with a written explanation or clarification that includes either the information requested by them, or an explanation of why the information requested is unavailable or cannot be obtained.

114.     As stated above, Rushmore received Plaintiffs QWR on April 9, 2015, did not acknowledge receipt until May 21, 2015, and did not provide a response until June 12, 2015, in violation of 12 USC §2605(e). **Exhibit K.**

115.     As to Rushmore's statements that the unanswered items in the QWR do not relate to the servicing of the loan at issue, Rushmore is required to provide this information under 12 U.S.C. § 2605(e) and 12 C.F.R. 1024.36.

116.     As to Rushmore's contention that the QWR seeks information that is, "…proprietary or confidential, is not in [Rushmore's] possession, and/or is not required to be provided." (See **Exhibit K** at page 2),  12 C.F.R. § 1024.36 "requires servicers to provide to borrowers upon their request information about their mortgage loan accounts, including their servicing files, which includes a complete payment history, a copy of their security instrument, collection notes, and other valuable information about their accounts" and if the servicer believes that it does not need to provide the information requested, then the servicer is required to notify the borrower in writing within five days of its determination, and must set forth the basis for its determination, as required by  12 C.F.R. § 1024.36(f)(2).

117.     Rushmore did not address the basis for its determination that certain requested information was privileged or otherwise "not required to be provided" as it claims in its response.  See **Exhibit K**.

118.    Plaintiffs have suffered damages as a result of Rushmore's aforementioned violations.

119.    Specifically, Plaintiffs are seeking to obtain a resolution on their mortgage and understand how their payments have been applied.  This information is available through the submission and response to a Qualified Written Request.

120.    Under 12 U.S.C. § 2605(f)(1), Rushmore is liable to Plaintiffs for the damages suffered as a result of Rushmore's aforementioned violations.

121.    Under 12 U.S.C. § 2605(f)(3), Plaintiffs are entitled to recover the costs and reasonable attorney's fees incurred as a result of Rushmore's violations.

WHEREFORE, Rushmore is liable to the Plaintiffs for actual damages in the amount of $25,000, plus attorney fees, and the costs of this action, pursuant to 12 U.S.C. §2605 (f)(1)-(3).


Respectfully submitted,

STERLING LINDSAY
RACHEL LINDSAY


By Counsel,

_____/Shikha Parikh_____
Shikha Parikh, #18517
Paradigm Law, P.L.C.
10615 Judicial Drive, Suite 403
Fairfax, Virginia 22030
P: 703-651-6811
F: 703-563-9199
sparikh@paradigm-law.com
*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this 10th day of August, 2015, a copy of the foregoing was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and sent via first-class mail to those not registered.

        /s/   Shikha Parikh

Shikha Parikh (#18517)
10615 Judicial Drive, Suite 403
Fairfax, Virginia 22030
P. 703.651.6811
F. 703.563.9199
sparikh@paradigm-law.com
*Counsel for Plaintiff*