## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |  |
|---|---|---|
| **STERLING LINDSAY,** ***et al.***, | * | |
| **Plaintiffs,** | * | |
|  | * | |
| **v.** | * | **Case No.: PWG-15-1031** |
|  | * | |
| **RUSHMORE LOAN MANAGEMENT,** | | |
| **SERVICES, LLC,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

After Plaintiffs Sterling Lindsay and Rachel Lindsay (collectively, the "Lindsays") stopped making payments on their mortgage loan, Defendant Rushmore Loan Management Services, LLC ("Rushmore") tried, without success, to collect on the debt. Rushmore ultimately initiated proceedings in state court[1] to foreclose on 2507 Monroe Court, Waldorf, Maryland 20603 (the "Property"), the Lindsays' real property purchased with the proceeds of the loan. In this action, the Lindsays allege that, in its debt collection efforts, Rushmore violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692a; and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code § 14-201 *et seq.* ECF No. 10.[2] Rushmore moved to dismiss for failure

---

[1] *Clark v. Lindsay*, No. 08C14002602 (Cir. Ct. Charles Cnty., Md. filed Oct. 7, 2014). The Maryland Judiciary Case Search website, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis, the contents of which I judicially notice, Fed. R. Civ. P. 201, 803(8)(a)(i), 901(b)(5), establishes that *Clark v. Lindsay* is still pending.

[2] Plaintiffs voluntarily dismissed their claim against Defendant Atlantic Law Group, LLC, ECF Nos. 4, 8, and amended their complaint, ECF No. 10.

to state a claim and based on the *Younger* abstention doctrine, *see Younger v. Harris*, 401 U.S. 37 (1971), but I denied both motions.  ECF Nos. 18, 53.

Now pending is Rushmore's Motion for Summary Judgment, ECF No. 46, which the parties fully briefed, ECF Nos. 46-4, 47, 47-3, 48.  The parties also filed executive summaries, ECF Nos. 46-1, 47-1, and a Joint Statement of Facts, ECF No. 46-3, as well as voluminous exhibits, ECF No. 47-5.  A hearing is unnecessary.  *See* Loc. R. 105.6.

There is no genuine dispute that the Lindsays submitted a complete loan modification application by May 2014. Therefore, Rushmore did not violate RESPA with regard to the Lindsays' later loss mitigation applications, because it was not required to comply with the loss mitigation procedures for any of Plaintiffs' loss mitigation applications submitted after the May, 2014 complete application. Additionally, a statute of limitations bars Plaintiffs' FDCPA claims. Also, the Lindsays cannot succeed on their MCDCA claim because, in part, they challenge the validity of the debt, which is not permissible under the statute, and to the extent that they challenge the amount rather than the validity, they cannot show that the amount in excess of what they believed they owed was an unauthorized type of charge, as a MCDCA claim requires. Finally, the Lindsays cannot succeed on their RESPA claim regarding Rushmore's allegedly delayed response to their inquiry about their debt because Plaintiffs have not provided any evidence that Rushmore's failure to provide a timely response caused damages.  Accordingly, I will grant Rushmore's Motion as to all counts.

## **Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## Count I: Violations of RESPA

The Lindsays stopped making mortgage payments in 2009 due to "Mr. Lindsay's loss of income."[3] Jt. Stmt. of Facts ¶ 5. Although they claim that they brought their loan current in April 2012, Am. Compl. ¶¶ 51–53, 58, they concede that they again stopped making payments in 2013 or 2014, Jt. Stmt. of Facts ¶ 10. Thus, in December 2013, they found themselves in default and unable to pay the amount necessary to cure the default, which the parties agree was at least $57,000. Jt. Stmt. of Facts ¶¶ 7–9. They submitted two "Home Retention Packages" in late 2013 and early 2014, but Rushmore informed them that both were incomplete. *Id.* ¶¶ 12, 14.

---

[3] Because the facts pertaining to each count largely are distinct, I will present them with the discussion of each count. I consider the facts in the light most favorable to Plaintiffs as the non-moving party, drawing all justifiable inferences in their favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009).

A few months later, in April 2014, the Lindsays submitted another incomplete loan modification application; Rushmore notified them that it, too, was incomplete, and they submitted the missing documents, such that, by May 29, 2014, they had "submitted a complete and full package to Rushmore for review."  Jt. Stmt. of Facts ¶¶ 16–19.  Rushmore denied the application on May 29, 2014. *Id.* ¶ 20.  Despite agreeing to the Joint Statement of Facts and that they had submitted what they believed to be a complete loan application, the Lindsays now "dispute that Rushmore ever deemed this application complete," given that Rushmore never notified them that it was complete, and because it was then denied (in Plaintiffs' view) for failure to submit a sufficient down payment.  Pls.' Opp'n 2.

The Lindsays submitted yet another loan modification application to Rushmore later that year, and Rushmore acknowledged receipt in a letter dated December 3, 2014.  Jt. Stmt. of Facts ¶ 21.  Rushmore denied this loan modification application on January 15, 2015, "because a complete package was not received more than 37 days before the Foreclosure Sale."  *Id.* ¶ 22. Finally, the Lindsays "submitted a package for short sale review on February 19, 2015," on which Rushmore failed to render a decision within thirty days.  Am. Compl. ¶¶ 97–98; *see* Def.'s Mem. 7.

In Count I, the Lindsays claim that Rushmore violated RESPA's dual-tracking provision, 12 C.F.R. § 1024.41(g), by scheduling a foreclosure sale for February 5, 2017, even though Plaintiffs contend that they had submitted a complete loan modification application on December 17, 2014.  Am. Compl. ¶¶ 83, 86–88.  The Lindsays assert that, if the application were incomplete, "Rushmore failed to send the notice of incomplete application within five (5) days of receipt of Plaintiffs' application, as required by 12 C.F. R. § 1024.41(b)(2)(i)(B)."  *Id.* ¶ 93. Plaintiffs also allege that "Rushmore further violated RESPA Regulation X by referring

Plaintiff's loan to foreclosure after loss mitigation had begun and the modification review was in Process." *Id.* ¶ 96.   Additionally, they allege that, pursuant to 12 C.F.R. § 1024.41(c), "Rushmore was required to render a decision on the short sale application within thirty (30) days," but Rushmore failed to do so. *Id.* ¶¶ 97–98.

Rushmore argues that it is entitled to summary judgment on Count I because it is undisputed that the Lindsays submitted, and Rushmore reviewed, a complete loan modification application in May 2014, and therefore their later applications for loan modification and short sale "are not subject to RESPA under RESPA's duplicative requests provision." Def.'s Mem. 5–6.   Rushmore asserts, and the Lindsays do not dispute, that Plaintiffs' loan modification applications, as well as their February 19, 2015 short sale request, constituted loss mitigation application for purposes of 12 C.F.R. § 1024.41. *See id.* at 6, 7.

The Lindsays counter that, although they submitted a complete application in May 2014, "it is unclear whether or not Rushmore deemed the application complete, as it does not appear that Rushmore ever sent Plaintiffs a notice that their application was considered complete or incomplete, as required under 12 C.F.R. § 1024.41(c)(3)(i)," and therefore their May 2014 application was not "a 'single complete loss mitigation application, so as to render the December 2014 application a 'duplicative request' not subject to RESPA's dual tracking provision." Pls.' Opp'n 6.   Noting that Rushmore's reason for its May 29, 2014 denial was that "t[h]e amount of the good faith down payment is insufficient to offer a loan modification," the Lindsays insist that Rushmore had asked them  for "'documents' indicating '*proof of funds* for a good faith down payment,'" not for the good faith down payment itself. *Id*. at 7 (emphasis added).   In their view, this creates a genuine dispute "as to whether Rushmore denied this application for being incomplete due to Plaintiffs' failure to submit a down payment." *Id*

The parties agree about the relevant law, *see* Def.'s Mem. 5–6, Pls.' Opp'n 6, which is straightforward:  "A servicer is only required to comply with the requirements of this section [pertaining to loss mitigation procedures] for a single *complete loss mitigation application* for a borrower's mortgage loan account."  12 C.F.R. § 1024.41(i) (emphasis added).  The regulation defines "loss mitigation application" as "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option," 12 C.F.R. § 1024.31, and "complete loss mitigation application" as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower," 12 C.F.R. § 1024.41(b)(1).  If a borrower submits an application that is not complete and fails to complete it "for a significant period of time," despite the servicer's "exercise[] [of] reasonable diligence in obtaining documents and information to complete [it]," and the servicer exercises its discretion to "evaluate [the] incomplete loss mitigation application and offer [the] borrower a loss mitigation option," that "evaluation and offer . . . shall not constitute an evaluation of a single complete loss mitigation application for purposes of paragraph (i) of this section."  12 C.F.R. § 1024.41(c)(2)(ii).[4]  Thus, the issue is whether the undisputed facts show that Rushmore received a "complete loss mitigation application" in May 2014.

With regard to Plaintiffs' assertion that Rushmore failed to comply with 12 C.F.R. § 1024.41(c)(3)(i)'s requirement that, "within 5 days . . . after receiving a borrower's complete loss mitigation application, a servicer shall provide the borrower a written notice that sets forth . . . [t]hat the loss mitigation application is complete," I note that § 1024.41(c)(3)(i) does not go into effect until October 19, 2017.  Therefore, the regulation does not yet require notice that a

---

[4] Defendant erroneously cites this subsection as § 1024.41(b)(2)(ii).  *See* Def.'s Mem. 6.

loss mitigation application was complete, and Plaintiffs' contention that the five day notice of receipt of a complete loss mitigation application applied to their May 2014 application is without merit. *See* 12 C.F.R. § 1024.41.

As for whether the May application was a complete loss mitigation application, the undisputed evidence shows that, after Plaintiffs submitted their April loan modification application, Rushmore requested additional documents including "[p]roof of funds for good faith down payment." Apr. 8, 2014 Ltr. to Pls., Jt. Rec. 195. Rushmore once again requested additional documents on April 25, 2014; it appears that by that time, Rushmore had received "[p]roof of funds for the down payment," because that category was not checked on the list of outstanding items. Apr. 25, 2014 Ltr. to Pls., Jt. Rec. 200–01. On May 29, 2014, Rushmore informed the Lindsays that their "request was carefully considered," but Rushmore could not "offer [Plaintiffs] a loan modification at th[at] time" because, even though Rushmore had received "proof of the good faith down payment[,] . . . [t]he amount of good faith down payment [was] insufficient to offer a loan modification." May 29, 2014 Ltr. to Pls., Jt. Rec. 205–06.

Contrary to the Lindsays' assertions, the undisputed evidence clearly shows that they submitted a complete loss mitigation application, including proof that they could make a good faith down payment, and Rushmore regarded their submission as complete when it denied the application. Despite the arguably misleading wording in the denial letter that referred to an "*amount* of good faith down payment" rather than the amount that Plaintiffs *could provide* as a good faith down payment, it is illogical to interpret Rushmore's denial to state that Plaintiffs were supposed to, but failed to, provide a good faith down payment, when Rushmore never

requested an actual payment.[5]  Rather, Rushmore received all of the information it requested and denied the application because Plaintiffs failed in their loan modification application to show that they could provide a sufficient good faith down payment if the application were approved.  Thus, there is no genuine dispute that the Lindsays' May 2014 loan modification application was a complete loss mitigation application under 12 C.F.R. § 1024.41(b)(1).  Therefore, Rushmore was not required to comply with the loss mitigation procedures of 12 C.F.R. § 1024.41 for any later loss mitigation applications that the Lindsays submitted, such as their later loan modification applications and their short sale request.  *See* 12 C.F.R. § 1024.41(i).  Consequently, Rushmore did not violate RESPA with regard to the Lindsays' later loss mitigation applications, and summary judgment in Rushmore's favor on Plaintiffs' RESPA claims in Count I is appropriate. *See id.*; Fed. R. Civ. P. 56(a).

## Count II: Liability under FDCPA

On December 11, 2013, Rushmore issued a Notice of Intent to Foreclose (sometimes "Notice"), which stated that the amount required to cure the default was $100,665.57, and that the creditor was RBS Financial Products, Inc. ("RBS").  Notice, Jt. Rec. 54; *see* Dec. 11, 2013 Ltr. to Pls., Jt. Rec. 65 (Notice cover letter stating that the "total amount due" was $102,807.36, but it stated that the total was "less [an] unapplied balance [of] $2,141.79," for an actual total of $100,665.57).  The Lindsays claim that the maximum amount necessary to cure their default at

---

[5]  Plaintiffs also argue that "Rushmore should not have taken language from 12 C.F.R. § 1024.41(g) informing Plaintiffs of the need to submit their complete application 'greater than 37 days from the scheduled foreclosure sale'" after Plaintiffs applied again for a loan modification in December 2014, if their "December 2014 application was a duplicative request not subject to RESPA's dual tracking provision." Pls.' Opp'n 7.  Plaintiffs provide no support for their argument that Rushmore's handling of the December application affected the completeness of their May application, and I will not consider it.  *See* Loc. R. 105.1 (requiring an opposition to a motion to be "accompanied by a memorandum setting forth the reasoning and authorities in support of it").

the time of the Notice should have been $57,242.82 and the actual creditor was Random Properties Acquisition Corp. III ("Random Properties").    Am. Compl. ¶¶ 56–58, 66–68. Rushmore then filed an Order to Docket (sometimes "Order") on October 7, 2014.  Jt. Rec. 1–90. The Lindsays claim that the Order stated that the debt was $115,081.68,[6] when, according to the Lindsays, it should have been $87,370.62.  Am. Compl. ¶¶ 60–61.

The Lindsays claim that Rushmore violated the FDCPA by "[f]alsely representing the amount of the debt" in the Notice of Intent to Foreclose and the Order to Docket, in violation of 15 U.S.C. §1692e(2)(A).  Am. Compl. ¶ 105(a), (e).  They claim that Rushmore also violated the FDCPA by "[m]isleading [Lindsay Sterling] to believe that the amount he paid to Rushmore and the previous loan servicer was incorrect, in violation of 15 U.S.C. §1692e(A) and §1692e(10)"; "[f]alsely representing the creditor in the Notice of Intent to Foreclose, in violation of 15 U.S.C. §1692e(A), §1692e(10), and/or §1692e(14)"; and "[f]ailing to appropriately identify the name of the creditor to whom the debt is owed, in violation of 15 U.S.C. §1692g(a)(2) [in the Notice]." *Id.* ¶ 105(b)–(d); *see id.* ¶¶ 66–68.

Rushmore argues that the one-year statute of limitations for FDCPA claims bars all of these claims.  Def.'s Mem. 8–9.  The Lindsays do not dispute Rushmore's assertion that "the FDCPA violations in the December 11, 2013 N[otice] fall outside of the one year limitations period, as Plaintiffs filed their law suit with this Court on April 10, 2015," insisting instead that their claims regarding the Order to Docket are timely.  Pls.' Opp'n 8–9.[7]

---

[6] The Affidavit of Default, Jt. Rec. 31, filed with the Order to Docket, Jt. Rec. 5, lists interest of $106,640.00 and escrow advances of $8,441.68, which total $115,081.68.

[7] Rushmore asserts that "Plaintiffs agree that the N[otice] falls outside the one year limitation period because it is dated December 11, 2013 and therefore summary judgment is appropriate as a matter of law under Count II as to the N[otice]."  Def.'s Reply 3. In Rushmore's view, "Plaintiffs creatively argue [inconsistently with their pleadings] that they are not suing under the

As with the RESPA claims, the parties agree on the governing law.  *See id.*; Def.'s Mem. 8–9.  A FDCPA claim "may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  "[T]he limitations period for FDCPA claims commences 'from the date of the first violation, and subsequent violations of the same type do not restart the limitations period.'"  *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md.) (quoting *McGhee v. JP Morgan Chase Bank, N.A.,* No. DKC-12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013) (quoting *Fontell v. Hassett,* 870 F. Supp. 2d 395, 404 (D. Md. 2012))), *aff'd*, 584 F. App'x 135 (4th Cir. 2014). Indeed, restarting the limitations period for each communication allegedly in violation of the FDCPA "would disincentivize creditors from attempting to resolve debts extrajudicially because each notice attempt would restart the statute of limitations."  *Id.*  Thus, if "(1) the subsequent communications are continued efforts to collect the same debt," and "(2) the validity of the debt itself is not challenged," then "the FDCPA statute of limitations is not reset by each communication."  *Id.* at 316–17 (citing *Reyes v. Wells Fargo Bank, N.A.,* No. 13-CV-547, 2013 WL 3874527, at *2 (E.D. Va. July 24, 2013).

The Lindsays filed suit on April 10, 2015.  ECF No. 1.  As Rushmore sees it, the one-year statute of limitations for FDCPA claims bars the claims based on the Notice of Intent to Foreclose and the Order to Docket alike, because the December 11, 2013 Notice of Intent to

---

N[otice], but rather, under the O[rder] which is dated later than the N[otice]."  *Id.*  As I read Plaintiffs' Opposition, they identify two sets of claims in Count II – those arising out of the Notice, which are barred, and one arising out of the Order, which they argue is not barred.  Pls.' Opp'n 8–9.  Plaintiffs clearly alleged in their Amended Complaint that Rushmore breached the FDCPA by misrepresenting the amount due on the Order to Docket as $115,081.68 when, according to Plaintiffs, "[a]t th[at] time, the maximum amount due would be no more than $87,370.62."  Am. Compl. ¶¶ 60–61, 105(e).  Accordingly, I will consider the timeliness of this claim.

Foreclose preceded this lawsuit by more than one year, and the claims stemming from the Order to Docket relate to the same debt.  Def.'s Mem. 8–9.  As noted, no dispute exists with regard to the material facts concerning the untimeliness of Plaintiffs' FDCPA claims based on the Notice of Intent to Foreclose.  *See* Pls.' Opp'n 8.  Thus, Rushmore is entitled to summary judgment on those claims in Count II.  *See* 15 U.S.C. § 1692k(d); Fed. R. Civ. P. 56(a).

Despite relying on the language from *Bey* quoted above, the Lindsays argue that "there is a genuine issue of material fact as to whether the O[rder] was a separate violation, which would put it inside the limitations period, or a continuing violation of the N[otice]."  Pls.' Opp'n 10.  In their view, the Order to Docket is "a separate violation of 15 U.S.C. § 1692, and not a continuing violation of the N[otice], as the information contained in the O[rder] differs from that contained in the N[otice]." *Id.* at 9.

The Notice of Intent to Foreclose informed Plaintiffs that they were "at risk of losing [their] home to foreclosure" because they had "missed one or more payments on [their] mortgage loan." Notice of Intent to Foreclose, Jt. Rec. 172.  It stated that a foreclosure action could be filed if they did not "bring the loan current, otherwise cure the default, or reach an agreement with [their] mortgage company to avoid foreclosure."  *Id.*  The Notice also stated that "[a] foreclosure action, called an order to docket or complaint to foreclose (the 'O[rder]') . . . must be filed in Circuit Court in order to move forward with foreclosure proceedings," but "may not be filed against [Plaintiffs] in court until at least 45 days after this Notice was mailed."  *Id*., Jt. Rec. 173. Additionally, it stated that "[t]he O[rder] cannot be filed until [the] loan is 90 days past due, and [Plaintiffs] have been sent this Notice."  *Id*.  The property subject to the Notice was "2507 Monroe Ct, Waldorf, MD 20603," Plaintiffs' Property, and the Lindsays were the borrowers. *Id*., Jt. Rec. 174.

The Order to Docket identifies the Lindsays' Property as well, and lists the Lindsays as Defendants in the foreclosure action. Order to Docket, Jt. Rec. 5.  The Notice was listed as an exhibit and served on the Lindsays, along with the Order to Docket.  *Id.*, Jt. Rec. 5–6, 52–64. Thus, the undisputed evidence shows that the Notice of Intent to Foreclose and the Order to Docket both were "efforts to collect the same debt," namely the debt Plaintiffs owed under their mortgage loan.  The Lindsays' efforts to characterize them as distinct claims fly in the face of the undisputed facts and are unavailing.

It is undisputed that the Lindsays challenge the validity of the debt asserted in the Notice of Intent to Foreclose, insofar as they claim that Rushmore attempted to collect the debt on behalf of a party other than the secured party, *see* Am. Compl. ¶¶ 66–68; Pls.' Opp'n 9; Def.'s Mem. 14–15.  But significantly, with regard to the Order to Docket, Plaintiffs do not challenge the validity of the debt, *see* Am. Compl. ¶¶ 67–68 (stating that the Order to Docket listed the correct secured party); they only challenge the amount due to cure the default, *see* Am. Compl. ¶¶ 58–61, 105 (alleging that the amount listed on the Order was $115,081.68 when arrearages were $87,370.62); Pls.' Opp'n 10 (stating that, in their Amended Complaint at ¶¶ 60–61, "[t]he amount listed in the O[rder] was also alleged to be incorrect").  Indeed, they concede that they have not made payments on their mortgage loan since May 2012 and could not cure their default after that, even if the amount due was only was the approximately $57,000 that they believed it to be.  Jt. Stmt. of Facts ¶¶ 5, 7–10; Am. Compl. ¶¶ 51–53, 58.  A challenge to the *amount* of a debt is not a challenge to its underlying *validity*.  *Cf. Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (noting that a debt collector can confirm the amount of debt claimed without "vouch[ing] for the validity of the underlying debt"); 15 U.S.C. § 1692e(2)(A) (providing that a false representation may be of "the character, amount, *or* legal status of any debt" (emphasis

added)).  Therefore, the limitations period for the claim arising from the Order to Docket began on the date of the first alleged violation, when Rushmore sent the Lindsays the Notice of Intent to Foreclose on December 11, 2013; service of the Order to Docket did not restart the limitations period.  *See Bey*, 997 F. Supp. 2d at 316–17.  Consequently, Rushmore is entitled to summary judgment on those claims in Count II as well.  *See* 15 U.S.C. § 1692k(d); Fed. R. Civ. P. 56(a).

### Count III: Violation of MCDCA

As noted, the Lindsays challenge the amount due as stated in the Notice of Intent to Foreclose, as well as the legitimacy of the creditor listed on the document.  Am. Compl. ¶¶ 56–57, 66.  They claim that "Defendant Rushmore violated the MCDCA, §14-202(8) by claiming a grossly inaccurate amount due and identifying that it was collecting a debt on behalf of a party that had no legal right to the debt in its Notice of Intent to Foreclose."  *Id.* ¶ 108.

"The MCDCA 'prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt.'"  *Pruitt v. Alba Law Grp., P.A.*, No. DKC-15-0458, 2015 WL 5032014, at *3 (D. Md. Aug. 24, 2015) (quoting *Stovall v. SunTrust Mortgage, Inc.,* No. RDB-10-2836, 2011 WL 4402680, at *9 (D. Md. Sept. 20, 2011)).  The provision that the Lindsays invoke states that a debt collector attempting to collect an alleged debt may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  Md. Code Ann., Com. Law § 14-202(8).  To establish a violation of this provision, the Lindsays must show "(1) that Defendant[] did not possess the right to collect the amount of debt sought; and (2) that Defendant[] attempted to collect the debt knowing that they lacked the right to do so."  *Pruitt*, 2015 WL 5032014, at *3.

This Court has stated repeatedly that, to prevail, plaintiffs must "demonstrate that the defendant 'acted with knowledge as to the *invalidity* of the debt.'"  *Id.* (quoting *Pugh v.*

*Corelogic Credco, LLC*, No. DKC-13-1602, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 769 (D. Md. 2012) (emphasis in original))); *see also, e.g.*, *Cole v. Fed. Nat'l Mortg. Ass'n*, No. GJH-15-3960, 2017 WL 623465, at *7 (D. Md. Feb. 14, 2017) (same); *Okoro v. Wells Fargo Bank, N.A.*, No. PX-16-0616, 2016 WL 5870031, at *10 (D. Md. Oct. 6, 2016) (same); *Awah v. Capital One Bank, N.A.*, No. DKC-14-1288, 2016 WL 930975, at *5 (D. Md. Mar. 11, 2016), *appeal dismissed*, No. 16-1361, 2016 WL 4501959 (4th Cir. Aug. 29, 2016) (same). Yet, this Court also has held, sometimes in the same opinions, that "a claim under § 14-202(8) challenging the validity of the underlying debt . . . is not viable." *Pruitt*, 2015 WL 5032014, at *5; *see also Awah*, 2016 WL 930975, at *5 ("Plaintiff . . . cannot challenge the validity of the underlying debt under the MCDCA."); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 405, 406 (D. Md. 2012) (stating that the MCDCA "is not a mechanism for attacking the validity of the debt itself" and "provides no basis for liability in contesting the underlying debt"), *aff'd*, 584 F. App'x 135 (4th Cir. 2014). Indeed, the statute "is meant to proscribe certain methods of debt collection," and to that end, it "focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid." *Pruitt*, 2015 WL 5032014, at *5 (quoting *Fontell*, 870 F. Supp. 2d at 405).

A recent Fourth Circuit opinion clarifies how a plaintiff can demonstrate that a debt was invalid (and that the defendant knew this) without actually challenging the validity of the underlying debt itself, a task that seems counterintuitive at first. In *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 381 (4th Cir. 2016), the Fourth Circuit vacated the dismissal of a § 14-202(8) claim and remanded for further proceedings. The plaintiffs had claimed that the defendants violated § 14-202(8) by filing "a request for writ of execution which attempted to seek an amount in excess of what was owed," and doing so "with knowledge that they were

seeking an unjustifiable amount." *Conteh v. Shamrock Cmty. Ass'n, Inc.*, No. BPG-14-794, 2015 WL 5177752, at *6 (D. Md. Sept. 3, 2015), *aff'd in part, vacated in part, remanded*, 648 F. App'x 377 (4th Cir. 2016). Specifically, they "claim[ed] that defendants had no right to file a request for writ of execution which sought $1,748.98, when only $1,483.96 remained due and owing." *Id.* at *6 n.8. When the Court dismissed the case, discovery had not begun, and thus, there was no evidence in the record to show what the additional $265.02 represented. *See Conteh*, 648 F. App'x at 381. The defendants argued that "even if the writ of execution inaccurately stated the amount due, defendants nonetheless had a right to collect the debt because they obtained a judgment against plaintiffs in District Court." *Conteh*, 2015 WL 5177752, at *6. The magistrate judge observed that the plaintiffs had "not demonstrated, and d[id] not appear to suggest, that the underlying debt itself was invalid." *Id.* On that basis, she concluded that "[t]he alleged discrepancy in the amount of the otherwise valid debt d[id] not constitute a violation of § 14–202(8)" because "defendants did not attempt to collect an invalid debt," and she dismissed the plaintiffs' MCDCA claim. *Id.*

On appeal, the Fourth Circuit held:

A debt collector violates this provision by placing a lien on the debtor's property for an amount in excess of the amount to which the debt collector is rightfully entitled *if* the amount sought exceeds the amount owed *as a result of the debt collector's inclusion of an unauthorized type of charge*. *See Allstate Lien & Recovery Corp. v. Stansbury,* 219 Md.App. 575, 101 A.3d 520, 529–30 (2014) (holding that debt collector's inclusion of unauthorized $1,000 processing fee in filing of lien constituted seeking right that did not exist for purposes of § 14–202(8) even though lien was filed on valid debt).

*Conteh*, 648 F. App'x at 381 (emphasis added). It observed that the case had not progressed to discovery, and therefore it was "not apparent from the record whether the alleged misstatement of the amount owed was the result of a typographical or mathematical error by [the defendants] or whether it was the result of [the defendants] including a type of charge not authorized by the

underlying judgment on which they sought satisfaction." *Id.* Because discovery might reveal evidence that the discrepancy resulted from the inclusion of an unauthorized charge, dismissal was inappropriate. *See id.*

Here, Rushmore contends that the Lindsays cannot recover under the MCDCA because, in alleging that the amount and creditor were incorrect on the Notice of Intent to Foreclose, they "are essentially challenging the validity of the underlying debt." Def.'s Mem. 15. As for the allegation that Rushmore listed the wrong creditor, this is a challenge to the validity of the debt, as the Lindsays are asserting that they did not owe any sum to RBS, that RBS "had no legal right to the debt." *See* Am. Compl. ¶ 108. Therefore, summary judgment in Rushmore's favor on this aspect of Plaintiffs' MCDCA claim is appropriate. *See Pruitt*, 2015 WL 5032014, at *5; *Fontell*, 870 F. Supp. 2d at 405–06.

In Rushmore's view, "Plaintiffs[']dispute [of] the amount owed" also "is an attack on the validity of the debt itself, specifically the amount of the default, and not Rushmore's conduct in servicing the loan." Def.'s Mem. 16. But, as discussed, Plaintiffs concede that they were in default, that is, that the debt was valid. Jt. Stmt. of Facts ¶¶ 7–10. They only contest the amount owed, Am. Compl. ¶ 108, and, as discussed, a dispute over the amount owed is not a challenge to the validity of the underlying debt. *Cf. Chaudhry*, 174 F.3d at 406; 15 U.S.C. § 1692e(2)(A). Thus, the Lindsays could prevail on their MCDCA claim and survive Rushmore's summary judgment motion if they can establish a *prima facie* case. *See Pruitt*, 2015 WL 5032014, at *3, *5.

But, the Lindsays cannot establish a *prima facie* case because they cannot show that Rushmore "acted with knowledge as to the *invalidity* of the debt." *Id.* at *3 (quoting *Pugh*, 2013 WL 5655705, at *4). Fatally, they do not claim, nor is there any evidence, that the amount

Rushmore sought exceeded the amount the Lindsays believed they owed "as a result of the debt collector's inclusion of an unauthorized type of charge."   *See Conteh*, 648 F. App'x at 381. Rather, they assert that they made mortgage payments that were not credited to their account, and that Rushmore included these authorized, but already paid, amounts in the debt listed on the Notice of Intent to Foreclose and Order to Docket.   *See* S. Lindsay Dep. 83:8–20, 84:9–14, Jt. Rec. 113 (testifying that, when he saw what he believed to be an inflated amount on the Notice, he did "not understanding how this number came about," because after  "going through the bankruptcy and going through all of those things," and considering "the money [he] put out there," it seemed "not right" for him to  "still [be] at th[at] point").[8]   Therefore, while Rushmore may have sent the Lindsays a Notice of Intent to Foreclose and/or Order to Docket that listed an amount owed greater than the amount they actually owed, this possible inaccuracy is not attributed to the inclusion of an unauthorized charge and consequently is not actionable under the MCDCA.  *See Conteh*, 648 F. App'x at 381.   Rushmore is entitled to summary judgment on the entirety of Plaintiffs' MCDCA claim.  *See id.*

---

[8] To demonstrate that the amount of the debt listed on the Notice of Intent to Foreclose or the Order to Docket was inaccurate, Plaintiffs rely on filings in their bankruptcy proceeding, including a Consent Order Modifying the Automatic Stay that provided for the Lindsays to make monthly payments to Random Properties beginning in June 2010, Jt. Rec. 294–98; a Letter of Default stating that the Lindsays were in default of the Consent Order by approximately $6,000 (two monthly payments) as of July 2012, suggesting that they had made payments between June 2010 and July 2012, Jt. Rec. 300–03; and the Chapter 13 Standing Trustee's Final Report and Account from May 20, 2014, stating that $32,790.84 was paid toward "Mortgage Arrearage" through the Clerk of the Bankruptcy Court, Jt. Rec. 318–19.  While these documents show that Plaintiffs made payments between June 2012 and May 2012, they do nothing to establish what the amount of the actual debt was when the Notice of Intent to Foreclose issued in December 2013 or when the Order to Docket issued in October 2014.

## Count IV: Violations of RESPA

Congress enacted the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, in part "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process."   12 U.S.C. § 2601(a).  To this end, when a mortgage loan servicer receives a qualified written request ("Qualified Request") from a borrower seeking "information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within five days . . . ."  12 U.S.C. § 2605(e)(1)(A).  Then, within thirty days, the servicer must "investigate and provide the information or explain why it is unable to do so."  *See* 12 U.S.C. § 2605(e)(2)(C).  If, however, the servicer notifies the borrower that its response will be delayed by not more than fifteen days and provides "the reasons for the delay in responding," then "[t]he 30-day period . . . may be extended for not more than 15 days."  12 U.S.C. § 2605(e)(4).

The Lindsays claim that "Rushmore received Plaintiffs[']'] Q[ualified Request] on April 9, 2015, did not acknowledge receipt until May 21, 2015, and did not provide a response until June 12, 2015, in violation of 12 USC § 2605(e)."  Am. Compl. ¶ 114.  To prevail on this RESPA claim, Plaintiffs "must demonstrate that the defendant was responsible for the servicing of the plaintiff's loan; the defendant received a valid Qualified Request from the plaintiff that relates to the servicing of a mortgage loan; the defendant failed to respond adequately; and the plaintiff is entitled to actual or statutory damages." *See Martins v. Wells Fargo Bank, N.A.*, No. CCB-16-1070, 2016 WL 7104813, at *3 (D. Md. Dec. 6, 2016) (citing *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 264–66 (D. Md. 2015)).

Rushmore insists that, even if the Lindsays' April 8, 2015 letter was a Qualified Request and Rushmore's response was untimely, both of which they dispute, "Plaintiffs [still] have failed

to show any damages as a result of [the] alleged violations and therefore do not have standing to bring [their] RESPA claims."  Def.'s Mem. 24.

"Under Section 2605(f), an individual plaintiff must plead either actual damages as a result of the RESPA violation or 'a pattern or practice of noncompliance' with RESPA requirements."  *Offiah v. Bank of Am., N.A.*, No. DKC 13-2261, 2014 WL 4295020, at *3 (D. Md. Aug. 29, 2014) (quoting 12 U.S.C. § 2605(f)(1)).  Plaintiffs do not allege a pattern or practice of noncompliance with regard to the handling of the Qualified Request.[9]  In their Amended Complaint, Plaintiffs claim that they "have suffered damages as a result of Rushmore's aforementioned violations."  Am. Compl. ¶ 118.  They elaborate that, "[s]pecifically, Plaintiffs

---

[9] They do, however, allege a pattern of noncompliance with regard to the unrelated loss mitigation application claim in Count I.  They allege:

> 100. Rushmore has engaged in a pattern or practice of noncompliance with RESPA by, at least:
> a. Failing to appropriately review the Plaintiff's *loss mitigation application* to determine if it was complete in a timely fashion;
> b. Failing to timely notify the Plaintiff in writing acknowledging receipt of their *loss mitigation application*;
> c. Failing to notify the Plaintiff in writing that it has determined that the *loss mitigation application* is either complete or incomplete within the statutory timeframe;
> d. Knowingly scheduling a foreclosure sale for February 5, 2015, when it had a facially complete *loss mitigation package* prior to 37 days before the foreclosure sale;
> e. Failing to voluntarily postpone the foreclosure sale while reviewing the Plaintiff for *loss mitigation options*; and
> f. Failing to render a decision on a *loss mitigation application* within the thirty (30) day requirements.
> . . .
> 103. Upon information and belief, Rushmore engages in a pattern or practice of noncompliance with RESPA by failing to properly handle *loss mitigation applications* it receives from other borrowers.

*See* Am. Compl. ¶¶ 100, 103 (emphases added).  But, the pleading of a pattern or practice with regard to the entirely distinct RESPA claim in Count I does not save the RESPA claim in Count IV, because the pattern or practice must be one "of noncompliance with the Q[ualified Request] provisions of RESPA."  *McCray v. Bank of Am., Corp.*, No. ELH-14-02446, 2015 WL 3487750, at *12 (D. Md. June 1, 2015) (quoting *Bravo v. MERSCORP, Inc.,* 12–CV–884 ENV LB, 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013)).

are seeking to obtain a resolution on their mortgage and understand how their payments have been applied," information that "is available through the submission and response to a Qualified Written Request." *Id.* ¶ 119. But, significantly, Plaintiffs have not provided any evidence that Rushmore's failure to provide a timely response has caused *damages*.

Plaintiffs plead in general language that they seek "actual damages," Am. Compl. 19, alleging that "Rushmore is liable to Plaintiffs for the damages suffered as a result of Rushmore's aforementioned violations," *id.* ¶ 120. Absent is any quantification or elaboration of the damages sought. In their Opposition, they argue:

> When asked if there was any additional documentation he thought should have been provided in Rushmore's QWR response, Mr. Lindsay stated "only what [undersigned counsel's office] asked for," and sarcastically asking "was all of this information done in a timely fashion?" claiming that Rushmore's untimely response was "one of the reasons" he was damaged.

Pls.' Opp'n 35 (quoting S. Lindsay Dep. 94:10–22, Jt. Rec. 116). Insofar as Mr. Lindsay is claiming emotional distress as a result of Rushmore's allegedly untimely (and perhaps incomplete, *see* Pls.' Opp'n 35) response in June 2015, there is no evidence that the "emotional distress that [his] whole family ha[d] been going through with this mortgage lender" worsened as a result of the alleged delay in responding to the Qualified Request. *See* S. Lindsay Dep. 94:16–96:20, Jt. Rec. 116. Rather, Mr. Lindsay testified that it worsened after he "initially got the Notice of Foreclosure," more than a year earlier, in December 2013. Thus, the Lindsays have not shown any emotional distress caused by Rushmore's delay in acknowledging their Qualified Request. *See Offiah v. Bank of Am., N.A.*, No. DKC 13-2261, 2014 WL 4295020, at *4 (D. Md. Aug. 29, 2014) ("Plaintiffs' conclusory assertion that they suffered 'anxiety, depression, and stress as a direct and proximate result of illegal conduct of [defendant]' is insufficient to allege actual damages under RESPA. *See, e.g., Ross v. FDIC*, 625 F.3d 808, 818 (4th Cir. 2010)

('[C]onclusory statements that the plaintiff suffered emotional distress ... [do not] support[ ] an award of compensatory damages.' (citation and internal quotation marks omitted)); *McCray v. Federal Home Loan Mortg. Corp.*, Civil Action No. GLR–13–1518, 2014 WL 293535, at *14 (D. Md. Jan. 14, 2014) ('that McCray simply alleges emotional distress, without supporting facts, is insufficient to satisfy the specificity by which emotional distress claims must be stated.' (internal citations omitted)); *Luther v. Wells Fargo Bank,* No. 4:11cv00057, 2012 WL 4405318, at *7 n. 6 (W.D. Va. Aug. 6, 2012) (same).").

Mr. Lindsay also testified that he incurred attorneys' fees and other costs as a result of Rushmore's delay in acknowledging their Qualified Request, but he could not "think of all the costs." S. Lindsay Dep. 98:11–99:3, Jt. Rec. 117.

> Courts have held that RESPA plaintiffs may recover actual damages for the costs of their efforts to obtain responses to QWR's *after defendants have failed to respond. See McCray v. Fed. Home Loan Mortgage Corp.,* GLR–13–01518, 2014 WL 293535, at *14 (D. Md. Jan.24, 2014) ("McCray alleges she accrued expenses in her attempts to receive responses to her QWRs, including sending certified mail, traveling to and from the post office, copying documents, and researching information. These expenses are recoverable under RESPA and are sufficiently alleged."); *McLean v. GMAC Mortgage Corp.,* 595 F.Supp.2d 1360, 1366 (S.D.Fla.2009) ("Courts have interpreted the term 'actual damages' to include pecuniary damages such as: (1) out-of-pocket expenses incurred dealing with the RESPA violation including expenses for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience, such as time spent away from employment while preparing correspondence to the loan servicer, to the extent it resulted in actual pecuniary loss (3) late fees and (4) denial of credit or denial of access to full amount of credit line."), *aff'd,* 398 F. App'x 467 (11th Cir. 2010).

*McCray v. Bank of Am., Corp.*, No. ELH-14-02446, 2015 WL 3487750, at *12 (D. Md. June 1, 2015) (emphasis added). While Mr. Lindsay testified that he paid to retain an attorney and that the attorney filed the Qualified Request on Plaintiffs' behalf, he does not allege that he incurred any costs "after defendants . . . failed to respond." *See id.* Consequently, he cannot prevail on his RESPA claim in Count IV. *See id.*

**<u>ORDER</u>**

Accordingly, it is this <u>4th</u> day of <u>April</u>, <u>2017</u>, hereby ORDERED that Defendant's Motion for Summary Judgment, ECF No. 46, IS GRANTED.  The trial, which is scheduled to begin May 23, 2017, IS CANCELLED.  The Clerk SHALL CLOSE this case.


_____/S/_____

Paul W. Grimm

United States District Judge

lyb